**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROBERT SONA and TRUDI SONA , | |
| Plaintiffs, | CIVIL ACTION NO. 3:10-CV-1416 |
| v. | (JUDGE CAPUTO) |
| STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY. | |
| Defendant, | |

## MEMORANDUM

Presently before the Court are Cross-Motions for Summary Judgment. (Docs. 12 and 14.) For the reasons discussed below, Plaintiffs' Summary Judgment Motion will be granted and Defendant's Summary Judgment Motion will be denied.

## BACKGROUND

### I.   Factual Background

The facts in the case have been stipulated to by the parties per a Stipulated Order filed on October 21, 2010. (Doc. 13.)  The accident forming the basis of the claims here occurred at Jacobino's Garage in Carbondale, Pennsylvania, on March 4, 2010.  On that day, Robert Sona drove to the garage to have his van's tires rotated and the oil changed. In the back of the van was a used dirt bike that Mr. Sona had recently purchased for his son.  Upon arriving at the garage, Mr. Sona parked his van and he and his son-in-law proceeded to take the dirt-bike out of the back of the van so that its oil could also be changed.  After the dirt bike was removed, a mechanic at the garage proceeded to drive Mr. Sona's van into the garage's first bay.  At that point, Mr. Sona began to manually push the dirt bike into the garage. Mr. Sona never sat on the dirt bike and did not have the bike's key

in his possession. While moving the bike across the parking lot, a Chevrolet Trail Blazer operated by a Kimberly Zantowski backed out of a parking spot and struck Mr. Sona's right hand. Mr. Sona sustained significant injuries as a result of the accident. At the time, Ms. Zantowski was insured with GEICO Insurance Company under a policy which carried Bodily Injury Limits of fifteen-thousand dollars ($15,000). GEICO tendered its policy limits of fifteen-thousand dollars ($15,000) in exchange for a General Release settling any and all claims against the tortfeasor. Mr. Sona then received permission from State Farm to accept the fifteen-thousand ($15,000) as full and final resolution of his claims against Ms. Zantowski. Mr. Sona subsequently made a claim for Underinsured Motorist Benefits and Medical Payments Coverage under his State Farm Policy Numbers 1486-924-38 and 1077837-C20-38T.

At the time of the accident the Sonas were covered by three separate automobile insurance policies they had with State Farm Mutual Automobile Insurance: (1) policy number 121 6615-E12-38D, which insured the Sonas' 2000 Dodge B3500 Van; (2) policy number 107 7837-C20-38T, which insured a 2000 Plymouth Neon; and (3) policy number 148 6924-38, which insured a 1997 Ford F Series dump truck. The Van policy had Underinsured Motor Vehicle Coverage of one-hundred thousand dollars ($100,000) per person and three-hundred thousand ($300,000) per occurrence, unstacked, and Medical Payments Coverage of ten-thousand dollars ($10,000) per occurrence. The Neon Policy had Underinsured Motor Vehicle Coverage of twenty-five thousand dollars ($25,000) per person and fifty-thousand ($50,000) per occurrence, stacked, and Medical Payments Coverage of one-hundred thousand dollars ($100,000) per occurrence. The Dump Truck Policy had Underinsured Motor Vehicle Coverage of one-hundred thousand dollars

($100,000) per person and three-hundred thousand dollars ($300,000) per occurrence, stacked, and Medical Payments Coverage of five-thousand ($5,000) per occurrence. All three policies contain the following Insuring Agreement:

> *We* will pay compensatory damages for *bodily injury* an *insured* is legally entitled to recover from the owner or driver of an *underinsured motor vehicle*. The *bodily injury* must be:
>
> 1.   sustained by the *insured*; and
>
> 2.   caused by an accident that involves the ownership, maintenance, or use of an *underinsured motor vehicle* as a motor vehicle.

(Ex. D, pp. 23-4). The Van Policy contains the following exclusionary language in its Underinsured Motor Vehicle Coverage Section:

> THERE IS NO COVERAGE FOR ANY INSURED WHO SUSTAINS BODILY INJURY WHILE OCCUPYING A MOTOR VEHICLE OWNED BY YOU OR ANY RESIDENT RELATIVE IF IT IS NOT YOUR CAR OR A NEWLY ACQUIRED CAR.
>
> This exclusion does not apply to the first *person* shown as a named insured on the Declarations Page and that named insured's spouse who resides primarily with that named insured, while *occupying* a motor vehicle not *owned by* one or both of them.

(Id. at 26). The Neon Policy and the Dump Truck Policy contain a virtually identical provision that is worded slightly differently: "THERE IS NO COVERAGE FOR AN *INSURED* WHO SUSTAINS *BODILY INJURY* WHILE *OCCUPYING* A MOTOR VEHICLE *OWNED BY* THAT *INSURED* IF THE VEHICLE IS NOT INSURED FOR UNDERINSURED MOTOR VEHICLE COVERAGE UNDER THIS POLICY OR ANY OTHER POLICY." (Id.)  In the Medical Payments Coverage section of all three policies, there is the following provision and exclusion: "*We* will pay for medical expenses for *bodily injury* to an *insured* arising out of the maintenance or use of a *motor vehicle*." (Id. at 13.) "THERE IS NOT COVERAGE FOR

3

*BODILY INJURY* . . . TO ANY *PERSON* WHILE OPERATING OR *OCCUPYING* . . . A RECREATIONAL VEHICLE NOT INTENDED FOR HIGHWAY USE; OR . . . A MOTORCYCLE, MOTOR-DRIVEN CYCLE, MOTORIZED PEDALCYCLE OR LIKE TYPE VEHICLE REQUIRED TO BE REGISTERED UNDER TITLE 75 OF THE PENNSYLVANIA CONSOLIDATED STATUTES." (Id. at 16.)

## II.     Procedural History

The Sonas initiated the instant suit with the filing of a Complaint in the Court of Common Pleas of Lackawanna County on June 7, 2010. The suit was then removed by State Farm. The Complaint included claims for Breach of Contract, Bad Faith pursuant to 42 Pa. C.S. § 8371, and Violation of the Pennsylvania Motor Vehicle Financial Responsibility Act § 1797(b)(4) and (6). After the Sonas filed their Complaint, State Farm filed a Cross-Complaint seeking Declaratory Judgment. By Order of this Court dated August 12, 2010, the two cases were consolidated. (Doc. 9.) By a Stipulated Order filed on October 21, 2010, the parties agreed that the pleadings were closed, discovery was complete, the stipulated facts would include the entire transcript from Robert Sona, and that the sole issues before the Court was whether there was coverage under the State Farm policies for Robert Sona for MPC and\or UIM. Plaintiff also agreed to withdraw his claim for Bad Faith. Cross-Motions for Summary Judgment were then filed by the parties. The Motions have been briefed and are ripe for review.

## **LEGAL STANDARD**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

4

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56©.  A fact is material if proof of its existence or nonexistence might affect the outcome of the suit under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Where there is no material fact in dispute, the moving party need only establish that it is entitled to judgment as a matter of law.  Where, however, there is a disputed issue of material fact, summary judgment is appropriate only if the factual dispute is not a genuine one.  *Id.*  An issue of material fact is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Id*.

Where there is a material fact in dispute, the moving party has the initial burden of proving that: (1) there is no genuine issue of material fact; and (2) the moving party is entitled to judgment as a matter of law.  *See* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2D § 2727 (2d ed. 1983).  The moving party may present its own evidence or, where the nonmoving party has the burden of proof, simply point out to the Court that "the nonmoving party has failed to make a sufficient showing of an essential element of her case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

All doubts as to the existence of a genuine issue of material fact must be resolved against the moving party, and the entire record must be examined in the light most favorable to the nonmoving party. *White v. Westinghouse Elec. Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  Once the moving party has satisfied its initial burden, the burden shifts to the nonmoving party to either present affirmative evidence supporting its version of the material facts or to refute the moving party's contention that the facts entitle it to judgment as a

5

matter of law.  *Anderson*, 477 U.S. at 256-57.

The Court need not accept mere conclusory allegations, whether they are made in the complaint or a sworn statement. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990). In deciding a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."  *Anderson*, 477 U.S. at 249.

## DISCUSSION

The heart of the issue between the parties was whether or not Robert Sona was "occupying" the dirt bike at the time of accident, since if he was, he would be excluded from both MP and UIM coverage under the exclusion for uninsured vehicles (and dirt bikes, per the MP exclusion) owned by the insured discussed above.  Because the Court finds that Robert Sona was not "occupying" the dirt bike at the time of the accident and therefore that the relevant exclusions under the policies do not apply, the Sonas' Motion for Summary Judgment will be granted and State Farm's Motion for Summary Judgment will be denied.

First, as an initial matter, in *Burdick v. Erie Ins. Group*, the Pennsylvania Superior Court held that a dirt bike is a motor vehicle under 75 Pa. C.S. § 102 of the Pennsylvania Vehicle Code. 946 A.2d 1106, 1109 (Pa. Super. 2008).  Second, and more significantly, the parties agree that *Utica Mut. Ins. Co. v. Contrisciane*, 504 Pa. 328 (1984) is the key case for determining whether an individual is "occupying" a vehicle.  In that case, the Pennsylvania Supreme Court held that:

> when a person is engaged in the lawful use of an insured vehicle, he will be considered to be "occupying" that vehicle within the meaning of the policy, provided he can meet the following criteria:

> (1) there is a causal relation or connection between the injury and the use of the insured vehicle;
>
> (2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;
>
> (3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and
>
> (4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.

*Id.* at 1010 (internal citation omitted).  In *Utica*, Kenneth Contrisciane was in an accident while driving an automobile owned by his employer. The police officer who arrived at the scene asked Mr. Contrisciane for his driver's license and registration which Mr. Contrisciane went to retrieve from his vehicle. When he returned, the officer was sitting in the police car completing an accident report. While Mr. Contrisciane was standing beside the police vehicle he was struck and killed by an automobile driven by an underinsured motorist. Linda Contrisciane, the executrix of Mr. Contrisciane's estate, sought underinsured motorist coverage from Utica, the employer's insurer. The issue before the court was whether Mr. Contrisciane was "occupying" the employer's vehicle so as to be covered under the employer's policy.  Finding the four criteria outlined above satisfied, the court held that Mr. Constrisciane was "occupying" the vehicle and was therefore covered under the employer's policy.  In so holding, the Court relied on the fact that Mr. Contrisciane was in lawful possession of the vehicle at the time of the accident; that he was required by law to stop and exchange information once involved in the accident; that he was thereafter directed by the police officer to bring his license and registration to the police car; that at all times Mr. Contrisciane was engaged in transactions essential to his continued use of the vehicle; and

that it was only because of the mandated requirements of the police officer that he found himself physically out of contact with his vehicle. *Id.* at 1009.  The court further held that, "it was the use of the vehicle which precipitated the whole unfortunate series of events." *Id*.

Here, while the dirt bike in question was a "motor vehicle" under the terms of the relevant exclusions, Robert Sona was not "occupying" the dirt bike at the time of the accident. Assuming *arguendo* that the four prongs of the *Utica* test are met under a literal employment of that framework, such an analysis misses the animating principle of the court's reasoning in that case.  In *Utica*, the court was being asked to decide under what circumstances a person who had occupied an insured vehicle but who was injured while outside the vehicle would still be considered an occupant at the time for purposes of invoking insurance coverage.  Mr. Contrisciane was driving his employer's vehicle, was pulled over, and was hit by a car while out of his car dealing with the traffic stop.  In contrast, here, Mr. Sona was simply moving his son's dirt bike into place for an oil change, the engine was not turned on, Mr. Sona did not have a key for the bike, and was not even sitting atop the bike. The dirt bike, while technically a motor vehicle, was more akin to any other inanimate object, e.g. a piece of furniture, which Mr. Sona was moving at the time fo the accident.  The *Utica* test was meant to broaden the parameters of "occupancy" in order ensure insurance coverage where the use of a vehicle had for some compelling reason been momentarily interrupted or stalled.  Mr. Sona was not in the midst of using the dirt bike,  about to start using the dirt bike, and, without the key, *could not* have started the bike, when the accident occurred.  As a result, following the logic of *Utica*, Mr. Sona was not "occupying" the dirt bike under the language of the relevant restrictions.

## **CONCLUSION**

For the foregoing reasons, the Sonas' Motion for Summary Judgment (Doc. 12) will be granted and State Farm's Motion for Summary Judgment (Doc. 14) will be denied. An appropriate order follows.


| | |
|---|---|
| 3/28/11 | /s/ A. Richard Caputo |
| Date | A. Richard Caputo |
| | United States District Judge |

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

ROBERT SONA and TRUDI SONA ,

    Plaintiffs,

        v.

STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY.

    Defendant,

CIVIL ACTION NO. 3:10-CV-1416

(JUDGE CAPUTO)

## ORDER

**NOW**, this __28th__ day of March, 2011, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Summary Judgment (Doc. 12) is **GRANTED** and Defendant's Motion for Summary Judgment (Doc. 14) is **DENIED**.

                              /s/ A. Richard Caputo
                              A. Richard Caputo
                              United States District Judge